Our next case this morning is No. 24, 1616, SMG, Inc. v. Opti-Luxx, Inc. Mr. Zevil Rayash. Good morning, Your Honors. Gaten Zevil Rayash on behalf of Opti-Luxx, may it please the Court. You have in this case before you two patents that issue one design patent and a related utility patent for illuminated signage, and the design patent being specifically for the designs for school bus signs. I'll address the D-930 real quickly first and then the 491 just to boil our arguments down and maybe give you a slightly different color for how to think about this. On the D-930, I think our argument really boils down to the District Court fundamentally misunderstood the purpose of the design patent. The common thread between these two issues on the claim construction and admitting the expert is that the District Court didn't understand that what matters in a design patent is ornamental appearance, not function. And that's why the District Court construed transparency to mean transparency and translucency based solely on the idea that both of these characteristics allow light to pass through, which is a functional characteristic of them, even after the expert basically conceded that visually they are distinct. On the expert, the District Court deemed expertise as a posita for illuminated signage to be foundationally sufficient to justify having this expert talk about whether an ordinary expert will be deceived, even when the expert admitted having no experience whatsoever with the ordinary observer in this instance. Can you point to any authority where we've said in any context that someone with extraordinary or expert knowledge and skills can't opine as to the perspective of a, let's say, lesser person, an ordinary person? Having those extraordinary skills is not a disqualifier, but it's also not a qualifier. They have to be qualified, and that either means being an ordinary observer or it means doing the work or having experience with ordinary observers. By doing the work, I mean doing a survey of ordinary observers. I'm not sure you pointed to any authorities where we've said you have to do surveys or you have to have served in a position by making purchases as an ordinary observer. Again, I come back to, I didn't see any authority for the suggestion that if I'm one of extraordinary knowledge, then I'm not almost per se qualified to also opine from the perspective of an ordinary person. Well, we did cite the authority in our brief, and the name of the case is escaping me, but this court basically said it's not enough to be able to testify from the perspective of an expert designer. That's not the test. Right, right. The test is ordinary observers. Here, Mr. York very clearly said he was testifying from the perspective on this point of an ordinary observer. Well, then let's assume for the sake of argument, this is the first case, and we are, the issue may not have come before the court before, but I'm also not aware of a case where the court said that you don't have to have some experience with ordinary observers, and it would be odd if you didn't. So you may have a good argument in this respect. The problem is, it seems to me, that it's forfeited, because at the time, they did the Von Deer on the expert, he'd submitted his expert report and indicated that he planned to testify about the perspective of an ordinary observer, and you didn't raise that in the Von Deer or in any way object to his qualifications. So why isn't it too late, after having agreed that he was a qualified expert, to suddenly during the trial suggest that, no, he's not qualified to speak about the perspective of an ordinary observer? Well, all experts have boundaries within which they are entitled to testify. But you knew what his testimony was going to be on this, right? Because it was in his expert report. Well, I don't know that the expert report focused so much on the ordinary observer issue as on the utility. It did. I've read it. OK. Well, I think the argument there was that there was some obligation, maybe at that point, to bring a motion and eliminate. And once he was, so let's- But you're saying now he wasn't qualified to testify about an ordinary observer. The problem is, he told you he was going to testify about what an ordinary observer would review, and you didn't object to his qualifications. That's a problem. It's a timeliness argument, and I do not concede it was untimely, because the objection was not to him being admitted at trial for the purpose at which he was admitted. We didn't object to that, and I'm not arguing now that that was objectionable. He was admitted at trial as an expert in illuminated signage. That in and of itself does not qualify him to testify as to what the ordinary observer, how the ordinary observer would perceive these signs. That's our position. Now, as soon as he started to testify about that, there was a timely objection made that that goes beyond the scope of the expertise for which you were admitted. And that's timely. The precedents established that that's timely in the Sixth Circuit. So I think that, I don't think that objection is well placed by SMG to say that it was forfeited. It came in before the testimony did, and that's critical because you don't want the jury to hear the testimony. You need to object before the testimony comes in. But there was nothing objectionable about the qualifications as stated at the beginning of his testimony. It wasn't anything objectionable, and at no point during that voir dire, or during that period before he was admitted as an expert in illuminated signage, was there any mention that he's going to testify on the base as to what the ordinary observer would think. Now, if it was in his expert report, that's one thing, and it probably would have been advisable for him to file a motion and eliminate instead of waiting until trial to do this, but that's a question of forfeiture. But if I'm following your argument, you're telling us he's not qualified to testify from the perspective or the opinion of an ordinary observer. If that's your position, that goes directly to his qualifications, and you said on the record to the district judge, you're content with his qualifications. But that wasn't what he was qualified for in the voir dire. That's not what, they did not admit him as a- We have an obligation to point that out, I think, when you said we don't object to his qualifications. Well, it was SMG's burden to admit him as an expert in that area, which they did not. Where's the transcript where he was, specifying the purpose for which he was admitted as an expert? This was at appendix 1727 to 28. That is where the judge ruled on the objection, oh, I'm sorry, that is where the objection was lodged. So the voir dire would have happened before that. 1697 to 1703 is the voir dire. Correct. Now, where's the ruling admitting him as an expert? I'm sorry, Your Honor? Where's the ruling admitting him as an expert? I think 1703 is the end of the voir dire, and where he's admitted as an expert. Correct. That's where the direct examination begins, at the end there. And I think back at 1697, the other side is offering him, 1697 line 20, Your Honor, this time I'd like to request Mr. York be recognized as an expert witness, having knowledge regarding LED lighting and illuminated signage. Why doesn't that encompass, hey, he's going to testify consistent with the jury instructions from the perspective of an ordinary observer. That's why we're all here. Well, are ordinary observers experts in illuminated signage and LEDs and illuminated signage? They aren't. It's not the same thing. I mean, that's not the same thing as saying, I know what ordinary observers would think when they're purchasers of school bus signs are not equivalent. You need us to read the record that you guys are just totally surprised when he started testifying from the perspective of an ordinary observer. The argument could have been made earlier, that's for sure. Well, you couldn't have been surprised because his expert report said exactly that was what he was going to do. The argument could have been made earlier. I'll concede that.  But it doesn't... Maybe you should turn it... Make it untimely. Can I just take it real quick back to the claim construction itself? It seems to me there may well be a distinction between transparent and translucent, but I'm not quite sure what transparent means in this field. My question to you is, if you prevail and we remand and say the claim is limited to transparent, does the district court still have discretion to have further proceedings on what does transparent itself mean in this field? We would be happy to, if the court's going to reverse, engage in those proceedings. I don't think it's necessary because their expert admitted what it means. He said that if they had intended for this to be transparent, they would have shown the structures behind the panel. The patent doesn't say that the front of the sign is transparent. The patent says that the lining designates transparency. Correct. Transparency, in my mind, implies a range that can be fully transparent, partially transparent, mostly transparent, that there is no claim that I see in the patent that it's transparent or not transparent. It's just... It's lined for transparency. The degree to which it's transparent is not clear. So, to me, that sort of justifies the district court's claim construction and leaves that to the jury. Well, there is a world in which a panel like that can be translucent and not transparent at all. That would have been our position at trial, was our sign has no transparency to it. You cannot see the structures behind it in any respect whatsoever. I agree with you that it's a matter of degree, and frankly, they're not mutually exclusive. If you look at the patent as a whole, there are other attributes. For example, that you can't see the LED lights behind the front panel. That suggests that it's not perfectly clear. That would be consistent, would it not, with the district court's claim construction? I don't... First of all, there's no rule that requires the patent drafter to show the structures behind a transparent panel. I understand, but we're trying to interpret what is meant by the lining designating transparency. And there may be... Because you have a frame and you have letters, you have opaque areas of the sign where the structures could be hid. I don't think that it's necessary to show those. Certainly if you put them in, that would be a strong implication that it's transparent. But you don't need that because they said right on in black and white words that these oblique shading lines know transparency. Think about it from this perspective, okay? What if they... Why don't you move on to the utility patents since you're running out of time? Before you do that, what the court instructed the jury... And this was at 648 of the trial transcript. I don't think it's in the joint appendix. It says the court has found that the word transparency can mean both transparent and translucent. So she's instructing the jury that transparent means something other than transparent. And that's the basic problem. That is the problem. I mean, you just said it means something more, but you're using the same word to describe only half of it. But it seems if you're agreeing that transparent is a matter of degree and that transparent and translucent are not mutually exclusive, these are two things I've heard you say today, right? Sure. Then why isn't the resolution here that we construe the claim as limited to transparent, but you have a dispute either in claim construction or maybe at trial about what does transparent actually mean? And more important, is your thing transparent or not? Is that the way this should work out? I think the intrinsic evidence points to only one conclusion there, so I think the court could resolve that. But if the court wants to remand it for proceedings in front of the district court, we'd be happy to accept that resolution as well. And I think the reason it points to one answer is because consider what if they had not put transparency in the description. A person looking at this would see oblique shading lines. They know that the NPP says that those can mean three things, reflectivity, transparency, translucency, right? And all the expert says was, well, for illuminated signage, it has to be transparent or translucent because you need to let the light through. And then they'd know transparency on the page is what they mean, right? So they're basically saying this means the same thing it would mean if we didn't put transparency on the page. It can't possibly be right. On the utility patent, basically our position here is that it's the function for purposes of the Doctrine of Equivalence function way result test.  Does that require something more than what the claim specifies or suggests is the function of the element in question? Well, functions don't have to be claimed, first of all. And secondly, there's also the way in result. They have to show all three of those are substantially the same. And they didn't meet that burden. I mean, the results are clearly different. I see that I'm out of time. No, we want to continue. Okay. Those are clearly three different things. And the expert, you know, we can get into kind of tying our tongue in knots with the linguistics of this. But the expert ultimately at the end of the day said, yes, there is this difference.  And it has benefits to the end user, to the manufacturer, to the distributor. And those are spelled out in the patent. I mean, personally, this should never even have made it to a jury in the first place. Because all the admissions are right there in the patent as to what this significance is. Intrinsic evidence. Correct. Correct. Yeah. I don't think after. But it did. And so then you consider, okay, well, what came in a trial? Well, the expert admitted at trial that these differences were substantial. That they had a substantial benefit to having the frame separate from the self-contained sign. Do those differences matter if the claim doesn't implicate those differences? I mean, the claim here just says the frame what surrounds the sign and is used to mount the sign on the bus. And it doesn't say, well, it should also be disassemblable so you can take apart the sign or this, that, and the other. All of these other benefits are not recited anywhere in the claim. Does that make a difference? No, I don't think that makes a difference. It's often the case that you realize what the benefits are by reviewing the description of the invention that is presented in the specifications. It's not necessarily always obvious exactly how the claim limitations are going to result. So the benefits specified in the specification, even if they may not be articulated in the claim, nonetheless, the benefits articulated in the specification are things that should be considered in the jury's determination of the factual question of what the function is for the function-way result test. Well, the function or the result, I mean, I think the benefits are the result. You get that result because of the way in which the frame functions in relationship to the self-contained sign. If that question is a fact question, wasn't that question then presented to the jury in this case? The jury obviously came down against you, but if they had that question before them and if that's a fact question, what are we to do with that? Well, we always have to look. I mean, the test is whether there was substantial evidence at the end of the day. Well, the jury's function is not to interpret the patent. Well, the claim construction has already happened. No, but we're talking about what the specification, what the patent describes the function is. If the patent says the function is X, it's not up to the jury to decide that the function is something different. Well, the patent is read as a whole, though. I mean, the jury is entitled to look at the patent in terms of, you know. But that's why you have an expert at trial. And when you have an expert at trial that then admits that there is a way that this functions together. I'm not saying what role an expert should play in interpreting the patent. Constantly and continuously, we've said that the interpretation of the patent, except in unusual circumstances, is a matter for the court based on extrinsic evidence. So it would seem as though the interpretation of the patent as to what the function is, if the patent addresses the function, is going to be dispositive. And that's what we've said in our cases. Yes, and this was a DOE claim because the court said there are differences. There had to be a difference in the function where it was ordered. The court said there are differences, and the court left that to the jury to determine as a matter of fact. Whether they are substantial. Whether they are substantial as to the function, way, and result. So I think the reconciliation here, Judge Dyck, is yes, the judge decided this was a DOE situation, not literal infringement. That was the judge's role. The jury winds up deciding are those substantial differences or not. Well, at least it did in this case. I'm not going to, I would not, if the court wanted to decide that you can never send a DOE claim to the jury. No, no, no, no, that's not the point at all. The point is if the patent says what the function is, it's not up to the jury to determine what the patent says. And it's not up to the jury to find a different function than what's said in the patent. And we've said that in various cases after crown packaging. That if the specification talks about the function, then that can be dispositive. Can I just add, I don't know if you had anything to add to that. I don't, I mean, I don't really need to disagree with it. I don't think, I think the question really for the jury was are these substantial differences or not. And that is what the expert conceded, that they were substantial. Because if it's a benefit to the end user and the manufacturer and distributor, it's substantial. In this case, as you have argued it to us, do you need us to find that no reasonable juror could have found Doctrine of Equivalence infringement as the case was presented? That is what I believe the court would need to find, unless it's going to conclude that this never should have gone to a juror in the first place. Okay. Thank you. Mr. Cunningham. Thank you, your honors. May it please the court. Tom Cunningham on behalf of Smart Trend Manufacturing. While we're on the utility patent, I think let's just go there. They talk about these admissions he made about various advantages that they're trying to import into the claim. He was asked about specific embodiments in the specification and the advantages of those. And after each one, he specifically said, but that's not part of the claim. That's not one of the embodiments that's claimed. Okay, but interpreting the patent and what's an embodiment and whether the frame embodiment requires those functions is a matter for the court. And we've said that a patent's disclosure is relevant and can be dispositive of the function. And so the argument here is that the patent discloses what the function is, and it's not up to the expert to interpret the patent. It's up to the court. Well, he certainly applied in the function wave result test. He applied the functions of the claim and analyzed those in light of the accused device. Well, interpreting what's the function, you have to look at the patent, right, if the patent deals with that question. If it doesn't deal with it, that's another matter. But if the patent tells you what the function is, if the patent here is set explicitly, the function of the frame is to allow easy replacement in case you want a different signage to be included within the frame. If the patent had been explicit as to what the function was, that would be binding, right? But I don't think it was. No, no, I understand, but answer my question. If the patent said what the function was, and their argument is that it did, but just assume for the moment, if the patent said what the function is, that's binding, right? I would think so, yes, Your Honor. Well, and here, didn't the court construe a frame and construe it as having to be separate and distinct? Yes, a separate and distinct component as opposed to being an integral component. And so that is the scope of the claim as the case comes to us, is that it's separate and distinct, right? Yes. And doesn't the record, including the intrinsic evidence of the patent, but also your own expert, indicate, perhaps, as the only reasonable conclusion, that there are benefits that follow from the frame being separate and distinct? Those benefits are from the frame being separable. How is that different than separate and distinct? Well, because the embodiments that were in the specification are directed to a sign which has a separate self-contained sign and a separate frame, whereas you can take that sign and remove and put in another one. This claim is not written to that. The claim language itself says it's a sign comprising a frame. The claim as construed by the district court requires the frame to be separate and distinct, does it not? It does. And then the judge gave some... And so aren't there benefits? Doesn't this record indisputably show that there are benefits from the frame being separate and distinct? I don't believe so, Your Honor. I think that those benefits are directed to embodiments where it's separable. All right, then help me. I'm not following your distinction between separable and separate. Okay. Separable is like here. The OptiLux sign is a tub where the frame and the rear panel are injection molded. Injection molded, so they're a single piece. The claim covers a sign that's going to have a frame with a rear panel that's either glued, screwed, whatever. Both of them have the components in and the lens on top. And the expert said, listen, those are the same. Those operate the same way. They hold the components, which is what the claim says. Function surrounding the components is one and then allowing it to be mounted. And the frame allows it and both allows it to be mounted. And he said that's an insubstantial change. They're interchangeable. And what they're saying is, well, because when you take apart the OptiLux sign, you have to rip off the lens and it breaks from the frame. That is separable. That's not separate and distinct. The lens and the frame may be separate components, but the claim doesn't require that they're separable. The district court agrees with that by taking literal infringement away from you, right? Well, the district court also framed the issue for everyone when it gave its opinion for the jury. It said, the primary difference then appears to be the integrality of the frame to the remainder of the sign. And whether this difference is substantial is a question for the jury. So it's integrality. Tough word to say. I guess, what evidence could the jury have that that was not a substantial difference? How could any reasonable fact finder have found on this record that that was not a substantial difference? I mean, the expert testimony. I mean, your expert repeatedly said there's benefits that follow from it being separate or separable. He said, well, he said separable. And I believe there is a distinction there, Your Honor. A lot of discussion in the briefs about the function way result test talk about the frame being separate, surrounds the sign, and mounts the sign to the bus. That's correct. And that those are the only attributes to be considered in a function way result test. Yes. But isn't that misplaced given the fact that the district court construed the claim that frame as being separate and distinct? And isn't that the functionality in question that the jury must consider? Again, Your Honor, I come back. I think that there's a difference between separate and distinct and separability. But we have to look at what the district court interpreted or how the district court interpreted the claim. And I think her guidance in regards to what the jury should look at is the integrality of the two is what she expected from an equivalence analysis given her construction. I'd like to move to the design patent. There's obviously two issues. I'll just spend a little bit of issue on the foundation, what they call the foundation issue. I think it really is a qualifications issue. I think you all alluded to this, that it was waived. And we believe so. If you look at there below, it was always about qualifications. Even in their opening brief, it was about qualifications. Only when you got to their reply brief did they say, well, Mr. York didn't have the proper foundation laid so he could testify from the perspective of an ordinary user. I think he did, clearly. Where do you see the foundation being laid that he could opine from the perspective of an ordinary user? I think it's substantial. Throughout his testimony, we all know he's an accomplished designer of illuminated signage and an expert in illuminated signage. In the appendix at 1691 and 92, he talked about how he's done signage for automotive applications, including planes and ships. But he's not familiar with school bus signage. He did say that at appendix 1761 and 62, that he's designed them for very similar type of vehicles in the transportation, like police cars and ambulances, where the conspicuousness is very important. He says those have the same challenges as buses. But the ordinary observer here is a purchaser of school buses, right? Yes. But he doesn't have that experience. He's not been a purchaser of school buses. Or familiar with purchasers. He's familiar. He talked about appendix 1765, how he has dealt with the purchasers who outfit the vehicles like police cars and ambulances. So he knows what's important to them. He also talked about, at 1764, that he researched all the DOT bus regulations. He talked to all the Smart Trend employees about what's important to customers to understand the needs of the industry. So he did work before this. And I think that they're narrowing what his qualifications need to be to be able to testify at this. The bar in the Sixth Circuit is pretty low on this. We cite the cases in our brief. You don't have to be an expert across the board on everything. I think it's the first Tennessee case and the Morales case. If the jury is instructed that they can determine the credibility of the witness, and the other side had the opportunity to cross-examine, then that's enough for the jury. And I think that that's, if not waived, I think clearly he had enough to create foundation. If we were to remand for further proceedings on the design patent, should the district court entertain another challenge to whether Mr. York can testify from the perspective of an ordinary observer? Or in your view, is it too late forever? I guess it depends on what it's remanded for. I think that would affect that. Suppose it were remanded for a new trial. I don't know. I don't know, Your Honor. I think that they had the opportunity to object to him before. I think that giving him another bite at the apple at this point would be fair. What would foreclose them from objecting in a new trial? I don't know, Your Honor. I don't know. I mean, they probably could object. But frankly, they should have made the objection. They never made a foundation objection at the district court. Had they, we would have had the opportunity to try and fill in the gaps. But they didn't do that. Foundation objections have to be clear. Well, I guess if there were an objection in a new trial, you could fill in the gaps, right? Yes, exactly, Your Honor. I can ask you on the claim construction. I think you argue that the court construed transparent based solely on extrinsic evidence. I think that's what you say in your brief. I think that may be true, but wouldn't that be an improper approach to claim construction? Well, when I say that, I say there's nothing in the intrinsic evidence to suggest what transparency means. There are very little, if any. But to me, what transparency means and whether these claims are limited to transparent are two different things. I understood you to be in part arguing that the claims are not even limited to just transparent, whatever transparent means. Okay. Are you conceding that the claims are limited to transparent? No, Your Honor. There's a difference between, as Judge Lynn pointed out, there's a difference between the word transparent and the word transparency. The word transparency imparts a degree, and that's where the issue is. And they're the ones who raised it. At summary judgment, they came in and said, this requires that it be completely transparent, and ours is not. Therefore, we win. And the judge, we came in and said, well, no, Your Honor. There's an issue here, and she construed transparency. Well, I guess why should we not send it back saying these claims are limited to transparent, but go ahead and figure out what transparent means in this art? Well, where would the word transparent come in that could limit the claims? It's not anywhere in the patent. What's in the patent is transparency. The patent says the oblique shading lines are to indicate transparent. No. The patent says the oblique shading lines denote transparency. All right. Well, you got me again from separability, transparent, transparency. I didn't see any argument about that in the briefing. Oh, it is in the briefing, Your Honor. What's the difference between transparency and transparent? Transparency, as Judge Lynn alluded to, denotes a degree of something. And that's what Mr. York said. Mr. York said you have completely transparent surfaces and you have opaque. Okay, so she could have instructed the jury that way, but she didn't. What she instructed the jury was that transparent means translucent. That seems a hard sell. Transparency means translucent? That can't be right. I think it was based on his opinion that they're interchangeable because you have this continuum, right? You have this continuum where you go across. And as something goes from completely transparent, it gains a measure of translucency, but it still has a measure of transparency. And that's what Mr. York's opinion was. It was his opinion was based on – her opinion was based on those facts before her. She also considered the MPEP, which is also extrinsic evidence. And she found that this was the meaning. Well, the problem is the MPEP treats transparent and translucent. It's different. But she considered that in her analysis. And that's just more extrinsic evidence that she considered and came to her opinion. And she's entitled to deference on that opinion under TEVA. I wasn't going to address claim construction unless you guys have any questions on the alternative grounds for affirmance. I will note one thing in regards to that, in that the defendants say that that should be remanded if you decide to change the claim construction. I don't think that's necessary here. As we point out in our brief, they basically admitted that if our construction – in summary judgment, if our constructions were accepted, there was infringement. I think we're out of time. Thank you, Your Honor. Your Honor, thank you for the two minutes of rebuttal time. I want to first point out that some of those appendix sites where he was talking about York's qualifications, what he was talking about was York testifying about what an ordinary observer would do. And there's really nothing in those specific sites that I looked at that says anything about his qualifications. Those were actually set forth in four specific points, Appendix 1681, Appendix 1693, Appendix 1753, and Appendix 1754. Those are the ones that really drill down on whether he's qualified or not. And at 1754, you can see that I've not worked in the school bus industry specifically. I worked in the automotive industry. I worked where these signs would function. And he's never said that he worked with any ordinary purchasers in either of those industries. The objection to an expert's qualifications to provide testimony that is about to be elicited by the attorney is an objection to foundation. That's what that is. It's a very specific objection to foundation when you have an expert in front of you and the testimony is about to go beyond the expertise that the expert has been admitted for. And that is what happened in this case, and that is timely. I agree with you, Judge Stark, that there is a distinction. The distinction you draw between what transparency means and whether there's a distinction between transparency and translucency. I believe that's how you said it, or whether it's limited to transparency are two different things you said. I completely agree with that, and I don't think it would be inappropriate for the court to send it back to have the district court have further proceedings to construe transparency. I think we're going to wind up with a plain and ordinary meaning that any seventh or eighth grader would understand based on their science classes of what transparency means. But certainly there is room for development on that point. Okay. I think we're out of time. Thank you.